Chase, J.
delivered the following opinion of the court:
Where a person shows title to a tract of land, as for instance Blackacre, and is in possession of part, possession of part is possession of the whole.
Where a person claims by possession alone, without showing any title, he must show an exclusive adverse possession by enclosure, and his claim cannot extend beyond his enclosures.
The reason is obvious, and the determination, when considered, will be found to correspond with the principles of justice, and to be in favour of the rightful owner of land, and against the intruder or trespasser.
Two principles, generally recognised and sanctioned by the decisions of the court, when understood, will show the propriety and justice of the determination. A title to a tract of land, as Blackacre, with possession of part is possession of the whole tract. Where two are in possession of a tract or a house, it is his possession who has the right.
According to the first principle, right and possession of part being possession of the whole, nothing can exclude the rightful owner from the advantages of his general possession, or operate in derogation of his right, (consistent with the second rule,) but acts of ownership *622 done by the intruder, which unequivocally show a claim of title in opposition to, or adversary to, the rightful owner, and such acts as necessarily exclude him from enjoying- or participating in the advantages derivable from the possession.
The plaintiff appealed to the court of appeals. At June term, 1798, the appeal was dismissed by the appellant’s attorney.
Opinion of John Thomson Mason, Esq. given before the above suit was brought.
John Gordon, in a manner not necessary upon the present occasion to be explained, became seised in fee-simple of and in a tract of land called Knave’s Disappointment: being so seised, William Black, of London, merchant, in 1768, obtained a judgment against him for the sum of 1,273/. 6s-. 2d. sterling, besides costs of suit in the provincial court. Upon this judgment an attachment under the act of 1715, c. 40. was sued out, and laid upon the lands called Knave’s Disappointment, which were appraised to the sum of 500/. sterling, and, in October, 1768, were condemned upon this attachment.
The whole of this business was transacted by Mr. Stephen West, now deceased, who at that time acted under a power of attorney from William Black. Upon the 1st of June, 1770, Stephen West, as attorney in fact for William Black, for the consideration of 500/. sterling, sold and conveyed this land to Adam Stewaft, who, on the 10th of the same month, for the consideration of 550/. sterling, sold and reconveyed the same land to Stephen West in his own right. On the 7th oí July, 1770, Stephen West, for the consideration of 900/. sterling, sold and conveyed this land to Charles Beatty and George Fraser Hawkins, who laid the same off into lots which they called The Addition to George Town, and sold and conveyed them to the present holders, or those under whom the present holders now claim.
John Gordon at this time set up a title to this land, but offers terms of compromise to the tenants in possession»
*623 The ohject of this opinion is to advise the present holders, as to the expediency of accepting on rejecting those terms of compromise. To this end it will be wholly unnecessary to give any opinion as to a great part of the case above stated. If the right be not in John Gordon, the present holders can derive no benefit from a compromise with him; or if the right be in him, and his remedy to enforce that right be gone, they have not any thing to fear from him.
. I shall, therefore, on this occasion, confine myself to two inquiries.
1st; Whether at this time there is in John Gordon an existing title to the lands in question ?
. 2d. If there be such a title, whether there be a l'emedy to reduce that title into possession ?
The first question will turn upon the condemnation in 1768, under the act of 1715, c. 40.
If this act of assembly was at this day res integra, and now for the first time to receive a construction, it would probably create some difficult questions. When taken in some points of view, the condemnation seems to vest the property condemned in him for whom the judgment of condemnation was rendered; and yet some other expressions of the same law, seem strongly to imply the necessity of an execution to carry that judgment into effect. And it will perhaps be no strained construction of the act of assembly, to make it afford to the plaintiff an option to take the property upon the condemnation subject to redemption at any time within one year,- or to have the property sold under execution, and hold the proceeds, thus subject to the demand of the defendant.
The true and genuine construction of a statute, is to gratify the meaning and intention of the makers thereof; and the expositions of judges and lawyers cotemporary with the law in its origin, afford the strongest evidence of what that intention was. The constant practice under *624 that law, from its passage in 1715 to the late revolution, has been to deliver over the property, upon a condemnation, to the plaintiff, with a view to vest it in him ; and I am told that no instance can be adduced ‘of a fi. fa¿ having issued upon a condemnation under attachment.
When a statute susceptible of divers expositions has been proceeded under, and enforced by, a competent jurisdiction, that construction which has been at first adopted will not be easily changed, and particularly at the same tribunal. But when a construction thus adopted has been invariably pursued, for a series of sixty or eighty years, and innumerable titles are acquired and held under the law thus expounded, that exposition itself has gained the strength and efficacy of a law, and will never be shaken. A contrary doctrine-would introduce that uncertainty which the law abhors; and in this particular instance defeat a number of titles, held under a long and uniform series of judicial proceedings.
I am therefore of opinion, upon the first point, that the condemnation in 1768, did vest the legal estate of Knave’s Disappointment in William Black, in fee-simple, and consequently, that there is no existing title in John Gordon.
But to consider the subject in the other point of view, and supposing the title of John Gordon to be good, it may, nevertheless, be a naked right, without a remedy to reduce it into possession, or make it effectual.
By the existing law of the land, no man can ent- r into lands, or support an ejectment after twenty years, to be computed from the time that his right of entry or title first accrued.
In 1768 the condemnation took place, in 1770 the sale to Beatty and Hawkins, who, in the same year obtained a complete exclusive possession - of the whole, which is evidenced by the survey of the land, laj ing it off as a town, and the sale of the lots. Since that period of time nothing has been done by John Gordon to defeat *625 the possession, nor has there been any act of the tenants amounting to a dereliction of their possessions, or evidencing an intention to do so. Under this view of the ease, then, Gordon has lost his remedy by ejectment even if he has a title. Nor do I think the circumstance of many lots lying unimproved and unenclosed, will place those lots in a different situation from the others. The extent of the possession acquired by Beatty and Hawkins is well ascertained j it will cover those who purchased under them, and must, in contemplation of law, continue until it be defeated by some adverse act, or relinquished and abandoned by the holders. Neither circumstance has an existence in fact; and the latter can never be presumed, because it is absurd to suppose that men purchased without an intention to hold; and yet if their conduct be construed as a desertion of the possession they had acquired, this desertion took place the very moment after the purchase.
To suppose that an actual possession of every inch of a tract of land by enclosure is necessary to preclude a right of entry under the statute of James, is to destroy the operation of that statute ; for it is such a possession as was probably never had in this country. So, too, to suppose that an occupancy by being on the land, or even by actual enclosures, for every moment of time in the whole twenty years is necessary, would produce the same effect as it would be to suppose such an occupancy as never existed anywhere.
Upon the whole, my opinion is, that John Gordon has no title to the land called Knave's Disappointment, and even if he has a title, he has lost his right of entry from length of time ; and, therefore, my advice to the present holders is, to enter into no terms of compromise whatever with him, or with Major John Davidson who claims under him.
Gorgetown, June 14, If94.

John T. Mason,